IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Marvin J. Todd and Carolyn D. Todd, | ) | C/A No.: 3:10-cv-787-JFA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER ON MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| Ford Motor Co., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the court on Defendant Ford Motor Company's Motion for Summary Judgment. (ECF No. 90). The Plaintiffs oppose the motion.[1] For the reasons that follow, this court grants the motion for summary judgment.

## I.     Facts and Procedural History

Plaintiffs initiated these proceedings by filing their Summons and Complaint with the court on March 29, 2010. In their initial pleading, Plaintiffs asserted strict liability, negligence, breach of warranty, and loss of consortium claims against Ford stemming from injuries sustained in a March 31, 2007 motor vehicle collision. At this point, the Plaintiffs have amended their pleadings to include a failure to warn claim.

The accident at issue in this case occurred in the northbound lane of U.S. Highway 1 in Lexington County when non-party Katherine Toth improperly attempted to pass to

---

[1] The court notes that the Plaintiffs initially had counsel who managed this case and filed pleadings on their behalf. However, unfortunately for the Plaintiffs, the primary attorney in their case had his law license temporarily revoked and was forced to withdraw from this case in June of 2012. Soon after, his firm disbanded, and his former law partners and associates also withdrew. On several occasions, the court extended the deadlines in this case to allow the Plaintiffs to find substitute counsel, but they were unable to do so. As such, the Plaintiffs are now proceeding pro se.

1

her left, crossed the center line into the Plaintiffs' lane of travel and struck their vehicle essentially head-on. Through this action, Plaintiffs are attempting to recover for the injuries that Mrs. Todd sustained in the accident, which they claim resulted from a design or manufacturing defect in the passenger restraint system of their 1995 Mercury Mystique. Mr. Todd has also asserted claims for negligent infliction of emotional distress and for loss of consortium. Ford has denied the defect allegations and has asserted numerous substantive defenses grounded in South Carolina product liability law.

On October 24, 2012, the Defendant filed this Motion for Summary Judgment. Because the Plaintiffs are proceeding pro se, the court then issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), to the Plaintiffs directing them to file a response by December 3, 2012 and further instructing them on summary judgment procedure. In response to the Motion for Summary Judgment, the Plaintiffs filed the report of Kenneth Brown, an expert who they retained to evaluate the design, usage, and performance of the occupant restraint systems in the Todd's 1995 Mercury Mystique. The Plaintiffs also filed two other documents relating to vehicle safety that appear to have been created by random law firms.

## II.     Legal Standard

### A.     Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### B. Products Liability

Pursuant to South Carolina law, a plaintiff may bring a product liability action under alternative theories, including negligence, strict liability, and warranty. *Talkington v. Atria Reclamelucifers Fabrieken BV (Cricket BV)*, 152 F.3d 254, 261 (4th Cir. 1998). "In South Carolina, 'to recover under a strict liability theory, the plaintiff must establish that: (1) the defendant's product was in a defective condition unreasonable dangerous for its intended use; (2) the defect existed when the product left the defendant's control; (3) the defect was the proximate cause of the injury sustained.'" *Id.* at 263 (quoting *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 328 (S.C. Ct. App. 1995)). On the other hand, to recover under negligence, "a plaintiff must prove three elements: '(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty.'" *Id.* (quoting *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 298 (1996)). "In most design-defect cases, the proof under the two theories will dovetail . . . ." *Id.*

"A supplier and manufacturer of a product are liable for failing to warn if they know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous." *Livingston v. Noland Corp.*, 362 S.E.2d 16, 18 (S.C. 1987) (citing *Gardner v. Q.H.S., Inc.*, 448 F.2d 238 (4th Cir. 1971)).

The South Carolina Supreme Court has held "that the exclusive test in a products liability design case is the risk-utility test with its requirement of showing a feasible alternative design." *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 14 (S.C. 2010). At the same time, South Carolina adheres to the "longstanding" principle "that a product is not in a defective condition unreasonably dangerous merely because it 'can be made more safe.'" *Id.* at 16 (quoting *Marchant v. Mitchell Distrib. Co.*, 240 S.E.2d 511 (S.C.)). Thus, "[i]n sum, in a product liability action, the plaintiff must present evidence of a reasonable alternative design. The plaintiff will be required to point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous." *Branham*, 701 S.E.2d at 16.

## III.  Analysis

Ford believes that it is entitled to judgment as a matter of law on both the manufacturing or design defect claim and the failure to warn claim. In support of its arguments, Ford cites the deposition testimony of the following Plaintiffs' experts:

> Kelly B. Kennett, with InSciTech, Inc. in Suwanee, Georgia.  Plaintiffs disclosed Kennett as their retained biomechanical engineer and expect him to testify regarding Mrs. Todd's mechanism of injury.

> Kenneth A. Brown, with Forensic Safety Group in Willow Grove, Pennsylvania. Brown's report, which was submitted by the Plaintiffs as part of their Response, states that he was retained to "investigate the design, use, and performance of the occupant protection systems, including the seatbelt and seat, being used by Mr. and Mrs. Todd at the time of the crash."
>
> Kenneth R. Laughery, Ph.D., of Janesville, Wisconsin. Plaintiffs disclosed Laughery as their expert on "human factors and warnings issues."

Though not submitted as part of the Plaintiffs' Response to the Motion for Summary Judgment, the court has taken upon itself to review the reports of these experts and the reports of the other experts previously disclosed by the Plaintiffs.[2] Despite this comprehensive review, the court finds that summary judgment is appropriate in this case.

### A.     Manufacturing or Design Defect

Defendant argues that the passenger restraint system installed in the Todd's 1995 Mercury Mystique was free from any manufacturing or design defect. And, according to their deposition testimony, none of the Plaintiffs' experts were able to identify any manufacturing or design defect in the passenger restraint system in the Todd's 1995 Mercury Mystique.

As the retained expert on Mrs. Todd's mechanism of injury, Kennett was unable to articulate any malfunctions in or flaws with the seatbelt webbing, the seatbelt hardware, or the passenger side airbag that resulted in Mrs. Todd's injuries. Rather, Kennett

---

[2] Fed. R. Civ. P. 56 states, "The court need consider only the cited materials, but it may consider other materials in the record." The Fourth Circuit has "recognized that, in assessing a summary judgment motion, a district court is obliged to consider its 'entire record.'" *Sinclair v. Mobile 360, Inc.*, 417 F. App'x 235, 242 (2011) (quoting *Campbell v. Hewitt, Coleman & Associates, Inc.*, 21 F.3d 52, 55 (4th Cir. 1994)). The language of Rule 56 has changed since the Fourth Circuit first recognized that obligation—nevertheless, this court found it appropriate to consider the entire record in making its decision.

5

explained that Mrs. Todd's morbid obesity "presents particular challenges in restraining occupants like Mrs. Todd in frontal collisions." (ECF No. 90-10, p. 33). He further opined that those challenges would be present "for pretty much all comparable vehicles" of which he is aware. *Id.* at p. 30.

Brown believes that the occupant restraint system in the 1995 Mercury Mystique was not designed to protect a woman of Mrs. Todd's size, and he opines that "Ford failed to guard Mrs. Todd from the dangers associated with this foreseeable and otherwise protectable crash." (ECF No. 96-2, p. 8). However, in his deposition testimony, Brown was unable to describe a guard for the system installed in the 1995 Mystique that Ford could have implemented to protect overweight occupants like Mrs. Todd. Additionally, though presented with a number of alternative design choices that Ford could have made with regard to the seating and restraint system, Brown concedes that none of them would have eliminated the potential for Mrs. Todd's injuries in the accident.

Plaintiffs' experts were unable to identify any design or manufacturing defect in the 1995 Mercury Mystique that lead to Mrs. Todd's injuries in this case. Moreover, no expert volunteered any alternative design that could have prevented Mrs. Todd's injuries. Thus, this court finds in favor of the Defendant as to the manufacturing and design defect claim.

### B. Failure to Warn

In the absence of any concrete design or manufacturing defect opinion, Brown believes that Ford should have provided a warning to obese front seat passengers. In his report, Brown states, "[h]ad Mrs. Todd been adequately warned that the vehicle was

unable to protect her in foreseeable and otherwise protectable crash events, she would have at least been alerted to the dangers she encountered in order to make other decisions for her transportation needs." (ECF No. 96-2, p. 9). In his deposition, Brown deferred to Laughery, the Plaintiffs' warnings/human factors expert, for the warning that should have been conveyed.

In his report, Laughery states that "[t]he hazard restraint system failure associated with excessively overweight seat occupants in a crash accident are not open and obvious." (ECF No. 56-3, p. 5). He also believes that the warning system in the 1995 Mystique to overweight passengers is inadequate and "virtually nonexistent." *Id.* Laughery offers the following warning, which he believes would have been adequate if it was prominently placed in the Owner Guide:

> HAZARD – RESTRAINT SYSTEM MAY FAIL IF OCCUPANT IS OVERWEIGHT
>
> The seat belts and seat backs in this vehicle may fail to restrain overweight occupants in frontal or rear end collisions. This safety issue is greater if the seat occupant weighs more than XXX pounds, and the hazard increases with higher weights.
>
> In a frontal collision the restraint system failure will cause the occupant to be thrust forward into the dash or windshield and suffer severe or fatal injuries. Similarly, in a rear end collision the seat back may collapse causing the occupant to be thrust backward with severe or fatal injury outcomes.

(ECF No. 56-3, p. 7). Laughery notes, in his report, that the maximum safe weight is stated as XXX pounds and submits that the appropriate value should be established through testing by Ford.

7

Ford points out that the Owner Guide does describe for passengers how safety belts should be worn and it further warns passengers about the hazards involved in wearing safety belts improperly.[3]  Neither Plaintiffs nor their experts dispute that these warnings are adequate.  Thus, Defendant contends that the only remaining question is whether Ford should have provided an additional or alternative warning to overweight occupants of the unique possibility of danger (forward excursion even when properly belted) that might confront them in a frontal collision.  Ford submits that, as to that question, Laughery's opinions are "woefully inadequate and should be disregarded." (ECF No. 90-1, p. 19).

Ford points out that in his own testimony Laughery admits that he is "assuming that [vehicle testing] will identify, since it's a measurable variable, what a safe or unsafe weight is.  And I don't know what that number is, but that's a number that, presumably, is identifiable through testing and it could be a part of the warning system."  (ECF No. 90-12, p. 28).  Laughery goes on to concede that it is not in his expertise as to whether

---

[3] The Owner Guide provides the following warning in bold and italicized text:

> Make sure that you and your passengers, including pregnant women, wear safety belts. Be sure that the lap belt portion of your safety belt fits snugly and as low as possible around the hips.  If safety belts are not used properly, the risk of you or your passengers being injured in a collision greatly increases.

(ECF No. 90-14, p. 4).  Elsewhere, the Owner Guide instructs users to "[m]ake sure that the lap belt is as low around your hips as possible [and not to] wear the lap belt around your waist.  If you do not use the lap belts properly, the risk of being injured in a collision greatly increases."  (ECF No. 90-14, p. 5).

8

there are any reliable, repeatable tests to allow a manufacturer to test for restraint effectiveness on a 5'2", 300-pound occupant—he merely assumes that it can be done.[4]

Additionally, Laughery could not be sure that his proposed warning would have been heeded by the Plaintiffs. Based on Mrs. Todd's own testimony, she did not review any of the documentation for the Mercury Mystique.[5] Thus, she would not have encountered the proposed warning on her own, and Laughery is left to conclude that her husband would have noticed the warning and brought it to her attention.

The deficiencies that Ford highlights in Laughery's opinion and proposed warning are fatal to Plaintiffs' failure to warn claim. Plaintiffs have not presented evidence that proper tests exist to determine the maximum passenger weight, and such lack of evidence is particularly harmful to their failure to warn claim.

## IV.    Conclusion

Based on the foregoing findings, this court hereby grants Defendant's Motion for Summary Judgment. (ECF No. 90). Accordingly, this case is dismissed with prejudice.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

January 17, 2013
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[4] Brown testified that it was possible to get a dummy in any size. However, "[w]hat you don't get out of that is you don't necessarily get a biofidelic dummy. You don't get a certified or a dummy that's useable for something, other than just size and weight." (ECF No. 90-11, p. 4).

[5] In fact, Mrs. Todd was asked three times about whether she reviewed the Mercury Mystique documentation, and she said, "[n]o" each time. At the hearing on the instant motion, Mrs. Todd stated that she did, in fact, review the Owner Guide, but, given her clear deposition testimony, the court feels constrained to find the contradictory statements made during the hearing "a sham issue of fact." *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d, 970 (4th Cir. 1990).